UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:13-cv-00312-MOC

| | | |
|---|---|---|
| **PATRICIA A. COKER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OF DECISION |
| | ) | and |
| v. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court upon plaintiff's Motion for Summary Judgment and

the Commissioner's Motion for Summary Judgment. Having carefully considered such motions

and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.      Administrative History**

Plaintiff filed applications for Disabled Widow's Benefits and Supplemental Security

Income ("SSI"), alleging disability beginning on January 1, 2003. Both claims were denied

initially and the SSI claim was denied on reconsideration. Plaintiff requested and was granted a

hearing before an administrative law judge ("ALJ") on both claims.  After conducting a hearing,

the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to

the Appeals Council. The Appeals Council denied Plaintiff's request for review of the ALJ's

decision, making the ALJ's decision the final decision of the Commissioner of Social Security

("Commissioner").  Thereafter, plaintiff timely filed this action.

## II.      Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion that follows.

## III.      Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456.

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the Rule 56(c) standard." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir.2011); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir.2003) (the Court reviews each motion separately on its own merits in order to "determine whether either party deserves judgment as a matter of law") (internal citations omitted).

## IV.      Substantial Evidence

## A.  Introduction

The court has read the transcript of plaintiff's administrative hearing, closely considered the decision of the ALJ in light of the record, and reviewed the extensive exhibits contained in the

administrative record.  The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence.  The court finds that the final decision is supported by substantial evidence.

**B. Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled.  The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.    An individual who does not have a "severe impairment" will not be found to be disabled;

c.    If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.    If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.    If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R.  § 404.1520(b) - (f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir.1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C. The Administrative Decision**

With an alleged onset date of January 1, 2003, the issue before the ALJ was whether plaintiff was disabled between that date through December 31, 2010, relative to her application for disabled widow's benefits, or through the date of decision, July 12, 2013, relative to her application for supplemental security income payments. At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found that plaintiff's complaints of recurrent and moderate major depressive order, as well as her bipolar disorder, amounted to severe impairments. At step three, the ALJ determined plaintiff had no impairment or combination of impairments that met or medically equaled any impairments in the regulatory listings. The ALJ also concluded at the third step that plaintiff suffered from a mild restriction in her activities of daily living, as well as moderate difficulties with social functioning, concentration, persistence, and pace, but that plaintiff's mental impairment did not meet the criteria listings under the governing regulations. (*See* Administrative Transcript, ("Tr.") at 15, referring to 20 C.F.R. § 404, app. 1 Listings 12.04, 12.06).

The ALJ next assessed plaintiff's residual functional capacity and found she could perform a full range of work at all exertional levels, which includes simple, routine job tasks. He concluded that plaintiff's "physical and mental impairments, considered single, and in combination, do not significantly limit the claimant's ability to perform basic work activities." (Tr. at 20). After discussing the evidence about plaintiff's treatment for behavioral and mental health, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and effects of her symptoms were not fully credible. The ALJ went on to explain why he did not

fully credit such testimony, noting, *inter alia*, plaintiff had stated "on several occasions that she had not been to a doctor in over 10 years" (Tr. at 18) but that the medical evidence indicated that she had made six emergency room visits between 2009 and 2012. The ALJ also noted that although plaintiff's mother stated in a third-party function report that plaintiff neither had interest in household chores nor cared how she looked, other evidence, including direct testimony from plaintiff, indicated that she routinely performed household chores such as sweeping and washing dishes and that she was neat, well-groomed, and dressed appropriately at her medical appointments. The ALJ found that the medical evidence indicated that plaintiff was not as functionally limited as her mother suggested. The ALJ then explained the weight given to each source of opinion evidence.

At step four, in assessing whether plaintiff had the residual functioning capacity to perform the requirements of her past relevant work, the ALJ found that she was capable of performing her previous jobs of housekeeper and retail pricer. These jobs do not require performance of work-related activities that are precluded by plaintiff's residual functional capacity. Proceeding to step five in the alternative, the ALJ found that considering the claimant's age, education, work experience, and residual functional capacity, other jobs exist in significant numbers in the national economy that plaintiff was capable of performing. The vocational expert who testified at plaintiff's hearing stated that given these factors, several simple, routine jobs that involved both medium and light levels of exertion existed in the region. Accordingly, the ALJ found plaintiff not disabled between January 1, 2003, and December 31, 2010, relative to her application for disabled widow's benefits, or through the date of the ALJ's June 23, 2011 decision, relative to her application for supplemental security income payments.

**D. Discussion**

**1. Plaintiff's Assignments of Error**

Plaintiff seeks judicial review of the Commissioner's final administrative decision, alleging that it is neither based on proper legal standards nor supported by substantial evidence. Specifically, plaintiff claims that the ALJ erred by failing to:

I.      properly develop the record on the issue of plaintiff's dry eye condition;

II.     classify plaintiff's lung and dry eye condition as severe;

III.    classify plaintiff's obesity as severe or otherwise discuss her weight in his decision;

IV.     apply the proper legal standards in assessing plaintiff's pain and credibility;

V.      apply the proper legal standards in weighing the opinion evidence in plaintiff's case.

Plaintiff also asserts generally that the ALJ's determination of her residual functioning capacity was not supported by substantial evidence. Plaintiff's assignments of error will be discussed *seriatim*.

**2. First Assignment of Error: Developing the Record on the Dry Eye Condition**

Plaintiff first contends that the ALJ committed an error of law by failing to properly develop the record on her dry eye condition. (Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 3).

> In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability. In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.

42 U.S.C.A. § 423. Pursuant to the governing regulations, a claimant for social security disability benefits bears the primary responsibility for presenting evidence to establish her disability. 20 C.F.R. § 404.1512(a), (c). See also 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.").

An ALJ has "a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). While an ALJ "cannot rely only on the evidence submitted by the claimant when that evidence is inadequate," the ALJ is not required "to function as the claimant's substitute counsel." Id., Bell v. Chater, No. 95–1089, 1995 WL 347142, at * 4 (4th Cir. June 9, 1995) (quoting Clark v. Shalala, 28 F.3d 828, 831–831 (8th Cir.1994)).

The ALJ's duty to develop the record "is somewhat relaxed when, as here, the claimant is represented by counsel. In such a case, the ALJ ordinarily is 'entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored.'" Walter v. Astrue, 2009 WL 2584817 (D. Md. Aug. 19, 2009) (citing Hawkins v. Chater, 113 F.3d 1162, 1167–68 (10th Cir.1997)). See also Smith v. Astrue, 2012 WL 3191296 (W.D.N.C. July 3, 2012). Here, plaintiff's counsel was present at her hearing before the ALJ and elicited direct testimony from plaintiff about her mental and physical conditions.

Plaintiff claims that the record is "bereft of medical opinions on the impact of the dry eye condition on [plaintiff's] ability to perform work-related functions." (Pl.'s Mem. at 8). Plaintiff also takes issue with the fact that the agency did not ask that the dry eye condition be explored in the consultative exam given that it was "one of her top complained-of and treated conditions."

Id. at 9. Plaintiff contends that the pain and discomfort that she experiences "would create both exertional limitations in the nature of fatigue from enduring the dry eye symptoms, and mental limitations in concentration, persistence and pace from distraction by the dry eye symptoms." Id.

A review of the record shows that plaintiff received a consultative examination from an ophthalmologist, Dr. Earl Sunderhaus, M.D. (Tr. at 267-69), as well as a physical consultative examination from Dr. Stephen Burgess, M.D., who noted in the very first sentence of his report that plaintiff is "a 56-year-old female with a history of dry eyes" (Tr. at 287). Dr. Sunderhaus and Dr. Burgess both examined Plaintiff's eyes (Tr. at 267-69, 288), and neither opined that her eye condition gave rise to any specific functional limitations beyond driving.

In addition to records of these examinations, the ALJ had before him, *inter alia,* records concerning (1) an occasion in April 2003 when Plaintiff visited Dr. Edward Isbey, M.D., at Asheville Eye Associates complaining of redness of both eyes (Tr. at 326-29), (2) occasions in October 2010 and July 2012 when Plaintiff presented to the emergency room complaining of bleeding from her left eye (Tr. at 347-48, 349-51), and (3) several occasions between March 2012 and May 2013 when nurse practitioner Sara Wallenius included "Dry Eye Syndrome" in her list of Plaintiff's active problems. (Tr. at 362, 366, 371, 377, 382).

Given that the ALJ had at least five documents before him regarding plaintiff's medical history with her dry eyes, and the fact that the ALJ explicitly addresses the incidents recorded in these documents in his decision, the court finds that the ALJ fully developed the record on the matter and had substantial evidence before him about the dry eye condition. Moreover, plaintiff has not identified any other records in existence that would have assisted the ALJ in better understanding plaintiff's claim about the impact of her dry eyes on her ability to work.

Only where "the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant" does his decision merit remand. <u>Marsh v. Harris</u>, 632 F.2d 296, 300 (4th Cir. 1980). Assuming *arguendo* that plaintiff had persuaded the court that the ALJ did not properly develop the record, she has not shown any prejudice as a result. She has made no effort to show that greater record development would have led to additional evidence that might have altered the ALJ's decision. *See* <u>Camp v. Massanari</u>, 22 F. App'x 311 (4th Cir. 2001) (citing <u>Newton v. Apfel</u>, 209 F.3d 448, 458 (5th Cir.2000) (holding that a finding of prejudice requires showing that additional evidence would have been produced as part of a fully developed record that might have led to a different decision)). Plaintiff has simply alleged that another medical opinion "on limitations in work-related functions from the dry eye condition would have resulted in greater exertional and mental work function limitations than those stated by the ALJ." (Pl.'s Mem. at 9). The court cannot find prejudice based on such conjecture.

Accordingly, because plaintiff has failed to show this court that the ALJ erred in developing the record on the issue of plaintiff's dry eye condition, her claim fails.

### 3. Second Assignment of Error: Classification of Lung Condition, Dry Eye Condition, and Obesity

Plaintiff's second argument is that the ALJ erred in omitting three conditions – dry eyes, chronic obstructive pulmonary disease ("COPD"), and alleged obesity – from his list of Plaintiff's severe impairments (<u>Id.</u> at 10-12).

At step two of the sequential evaluation, Plaintiff must show the existence of a medically determinable impairment, and then show it is severe. 20 C.F.R. 404.1520(a)(4)(ii), <u>Pass v. Chater,</u> 65 F.3d 1200, 1203 (4th Cir. 1995). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to

perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 C.F.R. 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). Basic work activities are those necessary to do most jobs, including walking, standing, sitting, lifting, carrying, seeing, hearing, speaking, using judgment, responding appropriately to supervision, co-workers and usual work situations, and understanding, carrying out, and remembering simple instructions. 20 C.F.R. § 404.1521.

When an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); SSR 96-8p. As the ALJ in this case found that plaintiff's depressive and bipolar disorders were severe impairments, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." Pompa v. Comm'r of Social Security, 2003 WL 21949797, at *1 (6th Cir. Aug. 11, 2003). Here, plaintiff has not sufficiently identified how any of the impairments she contends were severe resulted in work-related limitations greater than those found by the ALJ during the relevant time period.

In arguing that the ALJ erred by finding that the COPD and dry eye condition were not severe, plaintiff puts the same evidence in front of this court that she put before the ALJ and asks us to reach a different conclusion. As explained above, so long as the ALJ's decision was supported by substantial evidence, we will uphold his decision. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.2001) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996))

(internal quotation marks omitted) (first and second alterations in original). After closely reviewing the record before the ALJ, as well as his reasoning, this court finds that substantial evidence supports his decision. The ALJ stated that he considered the whole record (Tr. at 13), and, absent evidence to the contrary, we take him at his word. *See* Reid v. Comm'r of Soc. Sec., 13-1480, 2014 WL 2958800 (4th Cir. July 2, 2014) (citing Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir.2005)).

Plaintiff alleges that the ALJ "ignored" several facts regarding her dry eyes. Simply because the ALJ does not explicitly explain his consideration of every piece of information in the record does not mean he ignored them. See Upchurch v. Colvin, 5:13-CV-669-FL, 2014 WL 4352097 (E.D.N.C. Sept. 2, 2014); Brittain v. Sullivan, No. 91–1132, 956 F.2d 1162, at *6 (4th Cir.1992) ("An ALJ need not comment on all evidence submitted."). In fact, the ALJ's decision thoroughly addressed plaintiff's dry eye condition. The ALJ addressed plaintiff's medical history for treatment of dry eyes, beginning with the initial treatment in 2001 and continuing on and off through 2012. (Tr. at 14). He noted that Plaintiff complained of left eye bleeding (Id., referring to Tr. at 347-48, 349-51), that her eye had a puncture wound, and that her eye was red and swollen when she presented to the emergency room in October 2010. (Id., referring to Tr. at 348). He noted that she had been to 10 appointments between 2001 and 2004. (Id.). He also noted that the petitioner receives prescriptions for her dry eye condition, but that her eye examinations in 2011 and 2012 reveal that "she does not have any significant functional limitations due to dry eye." (Id. at 14). As the ALJ also states, Plaintiff did not seek any treatment for her eyes for nearly six years out of the almost 12-year time span addressed, and reported having no visual acuity problems nor eye pain. (Tr. at 14). Indeed, and as the ALJ emphasizes, Plaintiff did not report

any eye pain when she presented to the emergency room in October 2010 complaining that her left eye was bleeding. (Tr. at 14, referring to Tr. at 347).

Plaintiff urges the court to consider the fact that plaintiff "used her limited funds to pay for and get transportation to treatment for the dry eye condition communicate[s] that the symptoms from it caused more than a *de minimus* effect." (Pl's. Mem. At 12). While this may be the case, it does not show the court how this information impacts the ALJ's classification of plaintiff's dry eyes as "severe" under applicable law. A review of the medical records in plaintiff's file offers ample evidence for the ALJ's decision. In addition to the incidents specifically cited by the ALJ in his decision, Nurse Practitioner Sarah Wallenius repeatedly reported between March 2012 and March 2013 that Plaintiff was "[i]n no acute distress" (Tr. at 368, 373, 384), notwithstanding the fact that her dry eyes remained an active problem (see, *e.g*., Tr. at 366, 371, 382). In addition, Ms. Wallenius consistently noted that Plaintiff's "chief complaint[s]" did *not* include dry eyes. (See, *e.g*., Tr. at 366, 371, 382). Significantly, Dr. Burgess examined Plaintiff's eyes in connection with her complaint that they were dry (Tr. at 287, 288), then opined that her eyes did not cause any functional limitations (Tr. at 290). Dr. Sunderhaus examined Plaintiff's eyes and reported normal findings concerning her eye pressure, confrontation fields, precorneal tear film, cornea, anterior chamber, iris, lens, anterior vitreous, discs, arterioles, maculae, and peripheral retina. (Tr. at 267-69). Plaintiff also admitted that her eyes feel "much better" when she uses drops. (Tr. at 327). *See, e.g., Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by . . . treatment, it is not disabling."). Given the extensive medical records before the ALJ indicating that plaintiff's dry eye condition was treatable and not causing plaintiff significant pain or discomfort, as well as the ALJ's thorough discussion of her condition in his decision, this court finds that substantial

evidence exists to support the ALJ's classification of plaintiff's condition as a non-severe impairment.

Turning now to plaintiff's claim that her COPD should have been classified as severe, her argument on this point is twofold. First, plaintiff argues that the ALJ improperly based his decision on a medical exam (plaintiff's most recent) indicating that plaintiff's lungs were clear to auscultation and ignored the fact that plaintiff had been diagnosed with COPD, prescribed two inhalers, had a history of smoking, and had worked in two different mills sewing. Plaintiff then argues that in light of this information, as well as medical reports indicating that she became dizzy with the shortness of breath and had to hold onto something if she bent over or walked 10 blocks, the ALJ had a duty to "refute" these alleged functional limitations due to COPD.

In his decision, the ALJ found "the claimant does not have significant limitations due to chronic obstructive pulmonary disease; therefore, this impairment is not severe." (Tr. at 15.) The ALJ did not deny the existence of plaintiff's condition. Instead, he determined, after considering the medical evidence on the record about plaintiff's COPD diagnosis, her prescriptions to aid her condition, and her medical history regarding her lungs, that the COPD did not induce more than minimal effects on plaintiff's ability to work. Again, plaintiff here offers the exact same evidence to this court as she offered to the ALJ and asks us to make a different determination. We will not entertain such a request. Plaintiff's argument that the ALJ erred by "[producing] nothing to refute" her contention that the COPD condition is severe also fails. (Pl's Mem. at 10). As discussed above, Plaintiff, not the ALJ, bears the burden of proof and production during the first four steps of the sequential evaluation process. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir.1995).

It also bears mentioning, as defendant points out, that when asked to identify all the conditions that limited her ability to work in her application for SSI, Plaintiff did *not* include any lung conditions or complaints of problems with her lungs in the list that she provided (Tr. at 178, 212, 217; Commissioner's Brief at 8). A review of plaintiff's medical records indicates that historically, she has not had any problems with her lungs. Indeed, of the at least five visits that plaintiff made to the Western North Carolina Community Health Services clinic (where Ms. Wallenius works) in 2012 and 2013, only the two most recent indicate any problems with plaintiff's lungs. (See Tr. at 354-92). It appears that plaintiff was diagnosed with COPD in March 2013. (Tr. at 369).

Plaintiff's hearing before the ALJ occurred on June 10, 2013 and the ALJ issued his decision on July 12, 2013. This length of time, on its face, fails to meet the "duration requirement" under governing regulations, (See 20 C.F.R. § 404.1509, stating "Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."). Plaintiff has not alleged that her COPD is a condition that otherwise meets this standard. Because the ALJ sufficiently considered and discussed plaintiff's medical history regarding her lungs in his decision, this court finds that it is supported by substantial evidence.

Helpful to the court in finding no error in the ALJ's decision regarding the severity of plaintiff's dry eye and COPD conditions is the fact that plaintiff has in no way shown how she was prejudiced by this classification. The ALJ found at the second step of the Agency's sequential evaluation process that Plaintiff had two "severe" impairments (Tr. at 14), then proceeded to the third step (Tr. at 15). As explained above, an error at step two is harmless provided the adjudicator proceeds to step three because when an ALJ finds one severe

impairment, both severe and non-severe impairments must be considered in determining RFC. See Stacey v. Astrue, No. 1:09-CV-181, 2011 WL 841356 at *3 (W.D.N.C. Jan. 28, 2011). Indeed, the ALJ explicitly stated in his decision that in formulating his RFC finding, he was required to "consider all of [Plaintiff's] impairments, including impairments that are not severe." (Tr. at 13). Moreover, the ALJ explicitly addresses Plaintiff's dry eyes in step three (Tr. at 17, 19). Thus, because the ALJ considered these non-severe impairments in his RFC, plaintiff's argument that "[f]ailing to find the lung and dry eye conditions severe… prejudiced the Plaintiff in depriving her of the consideration of these conditions at later steps of the sequential evaluation" (Pl's. Mem. at 12) is incorrect.

Finally, the court has considered plaintiff's claim that the ALJ erred in not classifying her alleged obesity as a severe impairment that limits her abilities to perform basic work activities. Notably, plaintiff did not include obesity as a medical condition that limited her ability to work (Tr. at 178, 212, & 217). In addition, plaintiff did not raise the issue of her weight at her hearing before the ALJ. In fact, plaintiff has pointed to only one instance in her entire 150+ page medical record where obesity is even mentioned. This occurred when State Agency physician Dr. Burgess described plaintiff's abdomen as "moderately obese" during her December 2011 consultative exam. (Tr. at 289). In that examination, Dr. Burgess also found that plaintiff was minimally to mildly impaired in bending, stooping and squatting. (Tr. at 290). Plaintiff testified at her hearing that she becomes out of breath when she walks more than ten blocks (Tr. at 38) and that when she bent at the waist or squatted, she had to pull herself up on something, or sit and then get up. This was partly, but not wholly, due to dizziness which required her to catch herself on something. (Tr. at 41). Plaintiff urges us to imply a duty to examine obesity from these and other symptoms indicated in her medical record. (Pl's. Mem. at 13).

To be sure, obesity is a medical condition that an ALJ must consider in assessing whether an individual has a medically determinable impairment, and must include in the rest of the sequential evaluation where appropriate. SSR 02-1P. As discussed above, however, plaintiff bears the burden of presenting evidence before an ALJ about a medical condition. Plaintiff does not allege that the ALJ overlooked any medical records regarding obesity that the ALJ should have addressed. In fact, plaintiff has not even established that she is obese. She simply states that at some time between 2012 and 2013, she had a body mass index ("BMI") of 29.5 and that "it is possible for someone whose BMI is below 30 to have obesity if too large a percentage of the weight is from fat." (Tr. at 13, referring to SSR 02-1p). She makes no further statements on this medical condition. The parties' briefs recite plaintiff's weight and BMI levels at various times since the onset date at issue in this case. Without debating them further, the court conclusively states that Plaintiff has not met her burden in showing that she is obese because she has not provided any medical records or allegations to that effect. As stated above, it is the plaintiff's burden to provide information to the ALJ regarding any medical condition that might significantly limit a person's ability to perform basic work activities. Here, she did not.

Moreover, an ALJ is not tasked with the "impossible burden of mentioning every piece of evidence" that may be placed into the Administrative Record." Carringer v. Colvin, No. 2:13-cv-00027, 2014 WL 1281122, at *7 (W.D.N.C., March 27, 2014) (citing Parks v. Sullivan, 766 F.Supp. 627, 635 (N.D.Ill.1991). Here, plaintiff points the court to one incident in the entire record where plaintiff's weight is even mentioned as a medical issue. The court, upon further review, has found no other. While the ALJ must consider and analyze all "obviously probative exhibits," he need not recite each piece of evidence in the record to prove that such analysis has occurred. Craig, 76 F.3d at 590 (citing Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir.1984));

see also Upchurch v. Colvin, 5:13-CV-669-FL, 2014 WL 4352097 (E.D.N.C. Sept. 2, 2014). The gravamen of plaintiff's application for disability focused on her mental health and her dry eye condition. The ALJ discussed these thoroughly in his decision. As for the rest of plaintiff's medical ailments, the ALJ stated in his decision that he carefully considered "all the evidence" and the "entire record" (Tr. at 12, 13, 17). We take him at his word (see Reid v. Comm'r of Soc. Sec., 13-1480, 2014 WL 2958800 (4th Cir. July 2, 2014) (citing Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir.2005)), and find that the ALJ made no error on the matter of plaintiff's alleged obesity.

### 4. Third Assignment of Error: Residual Functioning Capacity

In the third assignment of error, plaintiff takes issue with several aspects of the Residual Functioning Capacity ("RFC") assessment, calling into question the ALJ's evaluation of her credibility and statements about her pain levels, as well as the weight he gave to opinion evidence. Plaintiff also challenges the RFC as a whole, alleging that it is not supported by substantial evidence.

The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

*Plaintiff's Credibility and Pain*

Plaintiff contends that the ALJ's credibility assessments are not supported by substantial evidence. (Pl.'s Mem. at 14). We note at the outset that because the ALJ "had the opportunity to

17

observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process, as articulated in Craig v. Chater. "First, there must be objective medical evidence showing the existence of a medical impairment(s) … which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996). If the ALJ finds such impairments, he must then proceed to the second step and assess "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Id. at 595; See 20 C.F.R. §§ 416.929(c)(1), 404.1529(c)(1).

> This evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings…any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.) and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (internal citations omitted). If the ALJ does not find a claimant's statements to be credible, the ALJ must provide specific reasons supported by the evidence. 20 C.F.R. § 404.1529(c)(4); SSR 96–7P; see also Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985) ("credibility determinations…should refer specifically to the evidence informing the ALJ's conclusion").

Here, at the first step of Craig, the ALJ found that Plaintiff's "medically determinable impairments" of major depressive and bipolar disorders "could reasonably be expected to cause the alleged symptoms." (Tr. at 18). The ALJ then determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible and provide several explanations for this finding. Id.  The ALJ satisfied the duty of

explanation by noting several of plaintiff's admissions that were inconsistent with her allegation that she is disabled. (Tr. at 18-19). *See* 20 C.F.R. § 404.1529(c)(4) (noting that such considerations are appropriate: "[w]e will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence"); SSR 96-7P ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record").

The ALJ noted, *inter alia*, that plaintiff stated that she had not been to a doctor in over 10 years, which conflicted with the medical record indicating several doctor visits. The ALJ also noted inconsistencies between statements by plaintiff and her mother regarding plaintiff's ability to carry out daily activities and reports of plaintiff's various medical doctors about such abilities. Finally, the ALJ cited plaintiff's statements that she collected unemployment benefits (Tr. at 18, referring to Tr. at 141, 272, 313). As this Court has explained, a person collecting such benefits must represent that she is able to work, and such a representation "is usually inconsistent with a claim of disability." Clark v. Astrue, No. 3:12-cv-00122, 2012 WL 6728441, at *3 (W.D.N.C. Dec. 28, 2012). The defendant has provided a comprehensive list of the inconsistencies with references to the ALJ's decision and the corresponding part of the administrative record where the inconsistency is found. (See Commissioner's Brief at 17-18).

Turning now to plaintiff's claim that the ALJ failed to adequately consider her allegations of pain, the court finds that her arguments fall short. As discussed above, the court found that the ALJ's assessment of plaintiff's mental and physical ailments to be supported by substantial evidence. Plaintiff cites several places in the record where she feels that the ALJ erred in assessing her pain due to her dry eyes. Once again, however, finding that substantial evidence supported the ALJ's determination that the dry eye condition was not severe, this court must

affirm the final decision of the Commissioner. Given the record before him and his explanation's regarding plaintiff's credibility, the court is satisfied that he adequately considered her dry eye condition and any accompanying pain and that substantial evidence supports the ALJ's findings and ultimate determinations as to credibility and pain.

*Opinion Evidence*

Plaintiff contends that the ALJ improperly assessed the opinion evidence provided by several medical examiners. An opinion provided by a non-treating doctor must be considered "together with the rest of the relevant evidence." 20 C.F.R. §§ 404.1527(b), 416.927(b); SSR 96-8p. In addition, an adjudicator must address such an opinion and – if it conflicts with the RFC – must explain why the opinion was not adopted. SSR 96-8p. In plaintiff's case, the ALJ ascribed varying levels of weight to the medical opinions included in the record. Plaintiff challenges the ALJ's treatment of: 1) examining physician Burgess, 2) examining psychologist Miller, 3) reviewing state agency psychologists Lloyd and Rapp, and 4) treating nurse practitioner Wallenius. The court finds that the ALJ properly explained his reasons for giving different weight to the different medical examiners and thus properly considered the opinion evidence before him.

Regarding the opinion of examining physician Burgess, plaintiff alleges that the ALJ improperly gave little weight to his opinion that plaintiff had "minimal to mild" limitations on her ability to bend, stoop, lift, walk, crawl, squat, and carry. The ALJ found that this opinion was "not consistent with the medical record as a whole" and noted that Dr. Burgess was a "one-time examiner." (Tr. at 19). He therefore gave it "little weight." Id. Plaintiff alleges that she was prejudiced because of this classification in that if it had been given more weight, she would have been found disabled. (Pl's. Mot. at 17). The court disagrees. Dr. Burgess' opinion that plaintiff's ability to perform certain activities "appears to be minimally to mildly impaired" is not inconsistent

with the RFC finding that Plaintiff could work at all exertional levels, and thus would not have impacted the RFC finding as a whole.

As for Dr. Miller's opinions on plaintiff's mental functioning, the ALJ gave some weight to his finding that Plaintiff "should be able to understand instructions," but found that his opinions on plaintiff's attention levels, social abilities, and stress tolerance were inconsistent with the record. He thus gave them little weight. Similarly, the ALJ gave only "some weight" to the opinion evidence of state agency psychologists Lloyd and Rapp because he found them somewhat inconsistent with the record as a whole. He found their opinions regarding plaintiff's ability to understand, remember, and carry out detailed instructions consistent with the record, but found others inconsistent and thus gave them little weight. Notably, Drs. Lloyd and Rapp both opined that Plaintiff could perform simple, routine tasks notwithstanding her moderate difficulties in social functioning (Tr. at 56, 58, 59, 83, 88). Even if their opinions had been given more weight, Plaintiff has not shown the court how this would have altered the outcome of the RFC.

Finally, we address plaintiff's contentions regarding nurse practitioner Wallenius. A nurse practitioner such as Ms. Wallenius is not an "acceptable medical source" within the meaning of the governing regulations and, therefore, she is an "other source" whose opinions are entitled to significantly less weight. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996), 20 C.F.R. §§ 404.1513(a), 416.913(a); 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). The ALJ, did, however, explain his assessment of her opinion and his reasoning for attributing less weight to it. See Tr. at 19-20. Moreover, as defendant points out, Ms. Wallenius repeatedly reported in her treatment notes that Plaintiff was *not* complaining of anxiety (Tr. at 363, 367, 378), depression (Tr. at 363, 367), or inability to cope with daily activities (Tr. at 367, 378). Again, Plaintiff has not shown how greater deference to Ms. Wallenius' opinion would have altered the outcome of the RFC, which focused on plaintiff's mental health.

Considering all of plaintiff's arguments concerning the ALJ's opinion evidence analysis, the court finds no merit to such contentions as the ALJ fully explained his balancing of the medical opinions before him. Thus, the court finds no error in the ALJ's consideration of opinion evidence.

*Substantial Evidence for the RFC*

In her final assignment of error, plaintiff contends that the ALJ erred in his evaluation of medical evidence, resulting in an RFC evaluation not supported by substantial evidence. However, as discussed above, the court finds that the ALJ did, in fact, rely on substantial evidence in evaluating the medical record. Because plaintiff offers no further argument under this legal standard, the court cannot uphold her assignment of error.

**E.      Conclusion**

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1)     the decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED**;

(2)     the plaintiff's Motion for Summary Judgment (#9) is **DENIED**;

(3)     the Commissioner's Motion for Summary Judgment (#16) is **GRANTED**; and

(4)     this action is **DISMISSED**.

Signed: September 29, 2014

Max O. Cogburn Jr.
United States District Judge